IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JAMES D. McCORNACK,

        Plaintiff,                      Civil No. 04-6305-HA

       v.                                OPINION
                                              AND ORDER
JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant.

Kathryn Tassinari
Drew L. Johnson
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
       Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204

Lucille G. Meis
Richard M. Rodriguez
Regional Chief Counsel
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security to discontinue his disability insurance benefits (DIB). Plaintiff was originally found disabled and awarded benefits on July 14, 2003, with an onset date of February 15, 1991. At that time, the administrative law judge (ALJ) found that plaintiff met the criteria of Listings 12.04 and 1.05C for severe low back injuries he sustained in an airplane crash in 1984, complicated by severe depression and anxiety.

On February 27, 2002, plaintiff received a Notice of Disability Cessation from the Commissioner stating that, as of November 2001, plaintiff was no longer disabled. Plaintiff sought reconsideration and a Notice of Reconsideration was issued on August 28, 2002, finding plaintiff not disabled. A hearing was held on March 22, 2004. Present at the hearing were plaintiff, represented by an attorney, and vocational expert (VE) Nancy Bloom. On

May 26, 2004, the ALJ determined that plaintiff's medical condition had improved, he was no longer disabled, and was capable of sedentary work, including his past relevant work as a freelance writer.

**FACTUAL BACKGROUND**

Plaintiff was fifty-five years old at the time of the 2004 hearing. He received an associate of arts degree in education and his prior employment history consists of work in aeronautic engineering and structural engineering. He owns a business that develops hand controls for paraplegics and amputees. He writes articles for magazines as part of his business.

Relevant Medical Evidence

Plaintiff presented to Dr. William J. Stump, M.D., a neurologist, on November 26, 1991, complaining of lower back pain and leg pain. Dr. Stump found no back muscle spasm, although plaintiff exhibited pain sensations in the left sacroiliac region. Plaintiff's range of motion was limited with back pain at flexion of eighty degrees, extension of forty degrees, and lateral bending of twenty degrees. The straight leg maneuver was negative bilaterally. Dr. Stump found normal strength to confrontation testing throughout the lower extremities, and described plaintiff as experiencing normal sensation to pinprick throughout the lower extremities. Dr. Stump diagnosed plaintiff with a history of lumbar fracture with previous neurological sequelae with significant improvement, and possible lumbar claudication due to lumbar stenosis. He recommended a magnetic resonance imaging (MRI) scan of plaintiff's lumbar spine. An MRI was performed on August 5, 1992, and revealed multiple level disc

degeneration with mild disc bulging and impingement upon the traversing L4 nerve roots bilaterally and right L5 nerve roots.

Dr. Stump examined plaintiff again on August 12, 1992. He reviewed the MRI and stated that it showed multi-level degenerative disc disease with disease beginning at L1-L2 and extending throughout the lumbar region. He also stated that there appeared to be hypertrophic abnormalities and disc bulging throughout, resulting in a moderate central canal stenosis, especially at the L3-L4 level. At L5, Dr. Stump noted a prominent moderate disc protrusion and compression of the right L5 nerve root. Dr. Stump diagnosed plaintiff with spinal stenosis, lumbar disc herniation, and chronic lower back and lower extremity pain. Dr. Stump opined that plaintiff's "symptoms will likely be greater and he will have increased risk of progression of his disease if he returns to an employment position requiring repetitive bending and lifting." AR 97.

On November 5, 1992, Dr. Michael Kostenko, D.O, wrote a letter summarizing his treatment of plaintiff and plaintiff's general medical condition. In addition to Dr. Stump's diagnoses, Dr. Kostenko identified plaintiff as suffering from situational depression and opined that he is unable to carry on relationships in business situations. He stated that "plaintiff is disabled, probably permanently so, with significant neuropsychiatric compromise." AR 98.

Plaintiff was examined by Dr. F. Joseph Whelan, M.D., a psychiatrist and neurologist, on March 28, 1993. Plaintiff reported that he had a history of alcoholism, was currently suffering from depression and mania, insomnia, and fluctuating weight. Dr.

Whelan assigned the following functional limitations: marked restrictions in daily activities; moderate difficulties in maintaining social functioning; frequent deficiencies in concentration, persistence, or pace; and episodes of decompensation. Dr. Whelan opined that plaintiff suffered from a dysthymic disorder with some post traumatic stress disorder features resulting from chronic pain. He considered plaintiff "to be permanently and totally disabled for any type of substantial gainful occupation of any type . . . . [H]e has no residual functional capacity to return to his former occupation or any other type of occupation on a sustained basis that would be currently available in the U.S. employment market." AR 102. He further found rehabilitative training to be futile.

State agency physician Dr. Linda Jensen, M.D., examined plaintiff in March 2001. She found that plaintiff is occasionally able to lift or carry twenty pounds; is frequently able to lift or carry ten pounds; is able to stand, walk, or sit for a total of six hours in a work day; and is unlimited in his ability to push or pull items. She further found that plaintiff should never climb, but is able to occasionally balance, stoop, kneel, crouch, and crawl.

At the Commissioner's request, plaintiff was evaluated by Dr. David Morrell, M.D., on May 30, 2002. He noted that plaintiff exhibited pain in the midline of the back with bilateral straight leg raising at forty-five degrees. Plaintiff spent approximately sixteen hours per day either lying down or reclined. The straight-leg raising testing was positive in the lower back region. Dr. Morrell opined that plaintiff suffered from lower back pain. There was no evidence of motor or sensory deficits in the lower extremities bilaterally. The sensory exam was normal to pinprick, vibration, position, and touch in the extremities.

Plaintiff has learned to live with his pain and showed a markedly positive attitude. His ability to rise, stand, and walk was limited by his chronic pain, which Dr. Morrell found to be in proportion to the objective findings. Dr. Morrell noted that any sort of motion that involved bending, stooping, or picking up objects would cause plaintiff a significant amount of pain.

Plaintiff presented to the White Bird Medical Clinic on August 6, 2002, complaining of worsening depression. He was prescribed Zoloft. About two weeks later, plaintiff returned to the clinic complaining that he was experiencing no positive effects from Zoloft. He was advised to continue the anti-depressant for at least another week.

On March 4, 2003, plaintiff was examined by Dr. James Newhall, M.D., his treating physician. He reported that there had been no improvements with taking Zoloft. Dr. Newhall diagnosed plaintiff with chronic depression and chronic back pain and prescribed Wellbutrin. On January 20, 2004, plaintiff reported that his depression was much better.

In a letter dated March 17, 2004, Dr. Newhall wrote that plaintiff has been living with chronic pain and depression since his injury. He stated,

> After having reviewed medical records and having examined [plaintiff] it is my opinion that [he] is permanently disabled and unable to be employed in a full time job. He cannot maintain an upright posture for more than a few hours at a time, or a total of about six hours in a day. Further medical or surgical treatment is unlikely to significantly change his condition.

AR 219.

//

//

Plaintiff's Testimony

Plaintiff testified that from 1991 to 2001, he experienced no significant medical improvement. He cannot be in an upright position for more than six hours in a day without lying down periodically for at least forty-five minutes at a time. He is able to exercise in a pool because it does not put any strain on his back. He takes a ballroom dance class where he dances for about twenty minutes and then lies down on a mat for twenty minutes.

Plaintiff worked as a river guide several years prior to the hearing. The trips lasted between two to four hours, with a half-hour break. He worked part-time, approximately eight hours a week. He guided young children on raft floats for a month during the summer and was able to sit, stand, and lie down in the boats while he worked.

He does not take pain killers because he has an addictive personality and describes himself as a "sober alcoholic." AR 277. He is able to go through the day with an "acceptable level of pain," and occasionally does light grocery shopping and chores around the house.

He testified that he cannot perform full-time work as a freelance writer because he cannot conduct the required research while lying in bed and if he stays in an upright position for too long, "the pain and temper management reduces [his] ability to write." AR 288.

The ALJ's Decision

The ALJ found that plaintiff no longer met Listing 1.05(C) (vertebrogenic disorders) because Dr. Morrell's evaluation in May 2002 revealed no evidence of motor or sensory loss. A vertebrogenic disorder includes spinal stenosis, and a finding of a Listing 1.05(C)

7 - OPINION AND ORDER

impairment requires the additional finding that the claimant suffer from significant motor loss with muscle weakness and sensory and reflex loss. The ALJ also found that plaintiff no longer met Listing 12.04 (depression) and that plaintiff has no restrictions of activities of daily living, no difficulties in maintaining social functioning, concentration, persistence and pace, and no episodes of decompensation. The ALJ concluded that plaintiff has experienced medical improvement from his comparison point of July 14, 1993, and that the improvement is related to plaintiff's ability to work. Although he has the severe impairment of degenerative disc disease, he retains the residual functional capacity for sedentary work and he is able to return to his past relevant work as a freelance writer.

## QUESTION PRESENTED

Whether plaintiff was able to engage in substantial gainful activity on November 1, 2001, the date of the Commissioner's decision that plaintiff's DIB should cease.[1]

## STANDARDS

When a claimant's benefits have been terminated by the Commissioner, the claimant bears the burden of establishing his continuing entitlement to them. *Gonzalez v. Harris*, 631 F.2d 143, 145 (9th Cir. 1980). "[H]owever, a prior ruling of disability can give rise to a presumption that the disability still exists." *Patti v. Schweiker*, 669 F.2d 582, 586 (9th Cir.

---

[1] Plaintiff received a Notice of Disability Cessation from the Commissioner on February 27, 2002, stating that, as of November 2001, plaintiff was no longer disabled. The disability determination hearing was held in March 2004, and the ALJ's decision finding plaintiff no longer disabled was issued in May 2004. In making his decision, the ALJ relied on evidence post-November 2001 to determine whether plaintiff remained disabled as of that date. Accordingly, in analyzing the ALJ's decision, this court considers the same post-November 2001 evidence.

8 - OPINION AND ORDER

1982); *see also Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973) ("Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged."). To rebut this presumption, the Commissioner must introduce evidence that the claimant's medical condition has improved. *Lopez v. Heckler*, 713 F.2d 1432, 1434 (9th Cir. 1983) (citations omitted).

The following is the multi-step sequential process the Commissioner has established for determining whether a claimant is no longer entitled to benefits:

<u>Step One</u>:  The ALJ first addresses whether the claimant is engaging in substantial gainful activity. If it is found that the claimant is engaged in substantial gainful activity, the claimant's benefits are terminated. 20 C.F.R. § 404.1594(f)(1). If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to Step Two.

<u>Step Two</u>:  The ALJ next asks whether the claimant has an impairment or combination of impairments that meet or equal the severity of an impairment set forth in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1594(f)(2). If the answer is in the affirmative, the claimant is found to still be disabled.

<u>Step Three</u>:  At Step Three, the ALJ determines whether there has been any medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). A medical improvement is defined as any decrease in the severity of the claimant's impairment as it was presented at the time of the previous determination of disability. 20 C.F.R. § 404.1594(b)(1). A finding that there has been a decrease in medical severity must be based on changes

1982); *see also Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973) ("Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged."). To rebut this presumption, the Commissioner must introduce evidence that the claimant's medical condition has improved. *Lopez v. Heckler*, 713 F.2d 1432, 1434 (9th Cir. 1983) (citations omitted).

The following is the multi-step sequential process the Commissioner has established for determining whether a claimant is no longer entitled to benefits:

<u>Step One</u>:  The ALJ first addresses whether the claimant is engaging in substantial gainful activity. If it is found that the claimant is engaged in substantial gainful activity, the claimant's benefits are terminated. 20 C.F.R. § 404.1594(f)(1). If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to Step Two.

<u>Step Two</u>:  The ALJ next asks whether the claimant has an impairment or combination of impairments that meet or equal the severity of an impairment set forth in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 404.1594(f)(2). If the answer is in the affirmative, the claimant is found to still be disabled.

<u>Step Three</u>:  At Step Three, the ALJ determines whether there has been any medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). A medical improvement is defined as any decrease in the severity of the claimant's impairment as it was presented at the time of the previous determination of disability. 20 C.F.R. § 404.1594(b)(1). A finding that there has been a decrease in medical severity must be based on changes

indicative of improvement with respect to symptoms, signs, or laboratory findings associated with the impairment. *Id.*

Step Four: If there has been medical improvement, the ALJ must determine whether the improvement is related to the claimant's ability to work. In making this determination, the ALJ looks at whether there has been an increase in the claimant's residual functioning capacity. 20 C.F.R. § 404.1594(f)(4).

Step Five: If it is found at Step Three that there has been no medical improvement, or if it is found at Step Four that the medical improvement is unrelated to the claimant's ability to work, the ALJ considers whether any of the special exceptions to medical improvement for determining disability apply. If none apply, benefits continue. 20 C.F.R. § 404.1594(f)(5).

Step Six: If a medical improvement is related to the claimant's ability to work or an exception applies, the ALJ next assesses whether all of the claimant's current impairments in combination are considered severe. 20 C.F.R. § 404.1594(f)(6).

Step Seven: If the impairments are considered severe, the ALJ gauges the claimant's current ability to perform substantial gainful activity by assessing the claimant's residual functioning capacity and considering whether the claimant can still perform work he or she has done in the past. If the claimant can still perform such work, disability is found to have ceased. 20 C.F.R. § 404.1594(f)(7).

Step Eight: If it is determined that the claimant is unable to perform work he or she has done in the past, the ALJ asks whether, given the claimant's residual functioning

capacity, age, education, and prior employment history, the claimant can perform other work. If so, the disability will be found to have ended. 20 C.F.R. § 404.1594(f)(8).

**ANALYSIS**

Here, the ALJ found that plaintiff was not presently performing substantial gainful activity. At Step Two, the ALJ found that plaintiff's degenerative disc disease was a severe impairment, but did not meet or equal any listed impairment. The ALJ found significant medical improvement at Step Three and further found that the improvement related to plaintiff's ability to work. These findings made it unnecessary for the ALJ to consider Step Five. At Step Six, the ALJ repeated his finding that plaintiff had the severe impairment of lumbar degenerative disc disease, and also found that plaintiff had no medically determinable mental impairment. The ALJ further found that plaintiff had the residual functioning capacity to perform a wide range of sedentary work. At Step Seven, the ALJ concluded that plaintiff could perform his past relevant work as a freelance writer, making it unnecessary to proceed to Step Eight.

For the reasons that follow, the court finds that the ALJ failed to rebut the presumption of continuing disability. Therefore, the ALJ's decision is reversed and this case is remanded for immediate payment of benefits.

<u>The ALJ erred by relying on Dr. Morrell's report</u>

Dr. Morrell's report revealed no evidence of motor or sensory loss. The ALJ relied on this finding in concluding that plaintiff was no longer disabled. However, at the time plaintiff was awarded benefits, Dr. Stump also found no motor or sensory loss. Nonetheless,

the prior ALJ found that plaintiff did suffer from sensory loss and had limited motion. Thus, Dr. Stump's finding of no sensory or motor loss was not inconsistent with the ultimate determination of disability; indeed the prior ALJ found disability in spite of Dr. Stump's finding. Similarly, the court finds that Dr. Morrell's conclusion that plaintiff has not suffered from motor or sensory loss is not sufficient evidence that disability has ceased.

The ALJ also relied on Dr. Morrell's report in finding that the medical evidence did not establish nerve root compression. However, the 1992 MRI scan revealed "moderate central canal stenosis suggesting impingement upon the traversing L4 nerve roots bilaterally," and "L4-5 small to moderate sized right paracentral/central disc protrusion that narrows the right subparticular recess suggesting impingement and/or displacement of the traversing right L5 nerve roots." AR 96. Dr. Morrell performed no testing to determine whether those conditions changed.

<u>The ALJ erred by failing to consider Dr. Newhall's opinion and failing to rebut the presumption that plaintiff still suffers from depression</u>

A treating physician's opinion is entitled to more weight than that of a non-treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is controverted by other medical opinions, the ALJ may choose to rely on opinions offered by non-treating physicians, but only if the ALJ provides specific and legitimate reasons for doing so. *Id.* (citation omitted). If the treating physician's opinion is uncontradicted by other medical evidence, the ALJ may still reject the doctor's opinion, but only by providing clear and convincing reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

Here, plaintiff's treating physician, Dr. Newhall, found plaintiff to be permanently disabled and unable to work full-time. He opined that plaintiff cannot maintain an upright posture for more than a few hours at a time, or a total of six hours daily. He further opined that additional medical or surgical treatment was unlikely to significantly change plaintiff's condition. The ALJ failed even to mention Dr. Newhall's opinion. This falls far short of both standards required to reject a treating physician's opinion.

The ALJ also failed to rebut the presumption that plaintiff continues to suffer from depression. The ALJ relied on reports in mid-2003 and early 2004 that plaintiff's depression was improving. These reports are a year and two years, respectively, after the agency issued its cessation notice. However, in August 2002, only six months after the issuance of the cessation notice, plaintiff reported worsening depression. He continued to report depression in March 2003. Thus, absent cogent evidence to the contrary, it is reasonable to presume that plaintiff was still suffering from depression in November 2001, the time at which the Commissioner determined that plaintiff was no longer disabled. *See McNabb v. Barnhart*, 340 F.3d 943, 944 (9th Cir. 2003) (citing 57 Fed. Reg. 9262 (Mar. 17, 1992)) (the agency's policy is to review termination cases on the basis of the claimant's condition only as of the cessation date). The court finds that the evidence suggesting that plaintiff continued to suffer from disabling depression in 2002 and 2003 are closer in time, and thus more relevant to the determination of whether plaintiff was suffering from depression in November 2001 than the medical reports from mid-2003 and early 2004 upon which the ALJ relied.

<u>The ALJ erred in rejecting plaintiff's testimony</u>

After a claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject the claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain and the accompanying limitations. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citations omitted). If the ALJ finds the claimant's testimony to be not credible, the ALJ must put forth specific findings sufficiently detailed to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Id.* Absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff produced objective medical evidence that he suffers from degenerative disc disease and bone splinters that project into his spinal canal and nerve roots. Plaintiff also provided testimony regarding his impairments and the limitations they cause him. The ALJ rejected plaintiff's testimony, finding that he is actively engaged in life; he dances and swims; and he does not take prescriptive pain medication. The court finds these reasons to be less than clear and convincing. Plaintiff testified that he was able to participate in the dance class only by bringing a mat in and lying down for twenty minutes during the class. His exercise in the pool is sufficient to keep him fit without causing strain to his back. He does not take prescriptive pain medication because of his addictive personality and his history with alcohol abuse.

Plaintiff urges this court to credit his testimony as true as a matter of law. *See Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). Although this court is convinced

that the ALJ provided legally insufficient reasons for rejecting plaintiff's testimony, it declines to find that the ALJ would be required to find plaintiff disabled based solely on plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding that the district court is allowed to exercise discretion when wielding the "crediting as true" rule). In other words, unlike in *Swenson*, the court is not persuaded that plaintiff's testimony, by itself, supports a decision to remand for payment of benefits. *Cf. Swenson*, 876 F.2d at 689 ("where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited . . . . [W]e will . . . take that testimony to be established as true."). Rather, the court finds that the ALJ's improper rejection of plaintiff's testimony is yet another reason why remand for reinstatement of benefits is warranted in this case.

Remand for an award of benefits

The court has discretion to remand for further proceedings or for an award of benefits. The court should remand for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there remain no outstanding issues that must be resolved before a finding of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he had used proper legal methods in evaluating the evidence. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The court finds that this is an appropriate case to remand for immediate reinstatement of benefits.

**CONCLUSION**

The court finds that the Commissioner's decision that plaintiff is no longer disabled is not free of legal error and is not supported by substantial evidence in the record. The decision of the Commissioner is REVERSED and this cause is REMANDED for immediate reinstatement of benefits.

IT IS SO ORDERED.

DATED this \_\_\_16\_\_ day of August, 2005.

        \_/s/Michael W. Mosman for _____
                Ancer L. Haggerty
            United States District Judge